IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

JOSHUA BANKO,

        Plaintiffs,

  v.

APPLE INC., and DOES 1 through 50,

        Defendants.
_____/

No. CV 13-02977 RS

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS**

I.     INTRODUCTION

This matter arises from the decision by defendant Apple, Inc. ("Apple") to fire plaintiff Joshua Banko ("Banko"). The complaint asserts five claims for relief. Defendant Apple moves to dismiss all five claims for failure to state a claim upon which relief may be granted. For the following reasons, defendant's motion to dismiss is granted in part and denied in part, with leave to amend. This matter is suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b).

## II. BACKGROUND[1]

Plaintiff Joshua Banko was employed by defendant Apple for 12 years. During this time, Banko worked as an engineer on multiple projects and supervised other engineers. Banko began his employment on an "at-will" basis. During his 12 year career at Apple, Banko received favorable performance reviews, was told he was a valuable employee, and was awarded multiple discretionary bonuses. He did not receive any negative performance reviews and was never put on a performance improvement plan.

In 2012, Banko learned one of the engineers he supervised ("Roe") had received a $40,000 pay increase and a grant of 1500 Restricted Stock Units, purportedly to prevent Roe from moving to Facebook. Shortly thereafter, Banko noticed Roe had been submitting expense reports which included personal and other expenses that were not properly documented. When Banko directed Roe to remove these inappropriate expenses, she refused.

Upon Roe's failure to remedy her inaccurate expense reports, Banko came to believe Roe was violating both Apple policy and applicable law. Banko feared this embezzlement might amount to a fraud against shareholders as well as the public by leading Apple to file inaccurate taxes but he was dissuaded from making any report by his supervisors. Ignoring those instructions, Banko reported Roe to Apple's upper management. Apple then conducted an internal audit to determine if Roe had misrepresented expenses on her expense reports. This audit uncovered over forty instances of inflated or falsified expenses for which Roe received reimbursement from Apple. When Banko recommended Apple upper management terminate Roe for fraud and embezzlement of company funds, his supervisors told him not to pursue the matter. Believing he was obligated by law and Apple policy to terminate Roe, Banko approached Victor Cousins of Apple's human resources department. In a subsequent meeting not attended by Banko, the decision was taken to terminate Roe. Nonetheless, several individuals in Apple management, including those who instructed Banko not to pursue the termination of Roe, were upset Banko had reported Roe to Cousins.

---

[1] The facts are taken from the complaint and assumed to be true for the purposes of this motion to dismiss.

1 Banko continued his duties at Apple and received praise for the completion of a prototype
2 ahead of schedule before holiday break. Upon returning, Banko received a significant
3 discretionary bonus for his work on the prototype. On January 14, 2013, less than two weeks
4 later, Banko's employment was terminated. Banko filed this lawsuit on June 27, 2013. He
5 advances five claims for relief: (1) violation of the Dodd-Frank Act; (2) wrongful termination in
6 violation of public policy; (3) violation of Section 1102.5 of the California Labor Code; (4)
7 breach of employment contract; and (5) breach of implied covenant of good faith and fair
8 dealing.

### III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Pleadings must be so construed so as to do justice." Fed. R. Civ. P. 8(e). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 566 U.S. 652, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id.* This determination is a context-specific task requiring the court "to draw in its judicial experience and common sense." *Id*. at 1950.

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted

inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.,* 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555 ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory statements," are not taken as true).

In dismissing a complaint, leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corporations*, 66 F.3d 245, 248 (9th Cir. 1995). When amendment would be futile, however, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

## IV. DISCUSSION

### A. Retaliation

Banko's first and third claims for relief both allege Apple violated the law by firing Banko for engaging in legally protected actions. The first claim for relief, under the Dodd-Frank Act 15 U.S.C. § 78u-6, is premised on Banko's reporting what he believed to be securities fraud to Apple management. That Act allows for a private claim for relief for violations of Section 1514A of Sarbanes-Oxley. 15 U.S.C. § 78u-6(h)(1)(A)(iii). The third claim arises not only from Banko's reporting to Apple management, but also from his refusal to cover up or engage in the alleged embezzlement. This third claim is brought pursuant to Section 1102.5 of the California Labor Code, which makes it illegal for an employer to retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal law. Banko contends his firing violates both the public policy of the Dodd-Frank Act and the Sarbanes-Oxley Act. Apple moves to dismiss both of these claims on three grounds: (1) the statute of limitations for a suit under Sarbanes-Oxley has expired; (2) Banko's actions are not protected under the Sarbanes-Oxley Act; and (3) not having filed a report with the Securities and Exchange Commission ("SEC"), but only with Apple management, Banko is not a "whistleblower" under Dodd-Frank.

### i. Statute of Limitations

The Dodd-Frank Act and the Sarbanes-Oxley Act each have their own statutes of limitation. Individuals who bring a Sarbanes-Oxley anti-retaliation claim must first file a complaint with the Secretary of Labor within 180 days of the alleged violation, and are only permitted to sue in federal court if the Secretary has not issued a final order within 210 days. 18 U.S.C. § 1514A(b)(2)(D); 29 C.F.R. § 1980.103(d); 12 U.S.C. § 5567(c)(4)(D). The Dodd-Frank Act provides for a six-year statute of limitations. 15 U.S.C. 78u-6(h)(B)(iii). Apple contends Banko has failed to satisfy the requisite Sarbanes-Oxley limitations period and administrative adjudication requirements. While Banko has not met the requirements of Sarbanes-Oxley, he is well-within the six-year limitations period provided by Dodd-Frank. *Id*. Although the first and third claims involve Sarbanes-Oxley, they are brought under different statutes. The first claim for relief is brought under Dodd-Frank, which creates a private right of action for violations of Sarbanes-Oxley. 15 U.S.C. § 78u-6(h)(1)(A)(iii). Therefore, it is timely. The third claim for relief is brought under the California Labor Code. This third claim is also timely. Therefore, Apple's motion to dismiss the third claim for relief is denied.

### ii. Protected Actions Under Sarbanes-Oxley

Banko's claims under the Dodd-Frank Act require that Banko's reporting and refusing to participate in or cover up the alleged embezzlement require that those actions fall within the protections of Sarbanes-Oxley. 15 U.S.C. § 78u-6(h)(1)(A)(iii). Apple contends Banko's actions are not protected because, according to Apple, reports regarding another employee's expense reports, even if accurate, do not sufficiently involve shareholder fraud within the meaning of Sarbanes-Oxley.

Sarbanes-Oxley protects those who provide information that they reasonably believe relates to fraud or securities violations as defined in 18 U.S.C. § 1514A(a)(1). *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996-97 (9th Cir. 2009). Here, Banko alleges he reasonably believed Roe's alleged embezzlement constituted fraud against shareholders. In response, Apple contends Roe's alleged behavior only amounted to a violation of an internal policy and did not rise to the

1 level of fraud against shareholders as required under Section 1514(A). At this juncture, Banko
2 need only plead facts sufficient to state a claim that relates to one of the listed categories under
3 Section 1514A. Thus, while Banko's belief might not be sufficiently reasonable to prevail, he
4 has pled sufficient facts to state a claim for relief. Fed. R. Civ. P. 12(b)(6).

        iii.   The Availability of Dodd-Frank's "Whistleblower Protection"

6      Apple argues that Banko is not a "whistleblower" because he did not file a report with the
7 Securities and Exchange Commission ("SEC"). Implicated by that question is the relationship
8 between Dodd-Frank's definition of "whistleblower" and the private claim for relief for
9 violations of Sarbanes-Oxley. As discussed above, this claim for relief is brought under the
10 Dodd-Frank Act, which authorizes a private right of action for violations of Sarbanes-Oxley. 15
11 U.S.C. § 78u-6(h)(1)(A)(iii). The issue here is whether that right of action is available to an
12 individual who does not meet the Dodd-Frank Act's definition of "whistleblower." Apple argues
13 an individual must actually make a complaint to the SEC pursuant to Section 78u-6(a), which
14 defines "whistleblower" as "any individual who provides, or 2 or more individuals acting jointly
15 who provide, information relating to a violation of the securities laws to the Commission, in a
16 manner established, by rule or regulation, by the Commission." Banko argues Section 78u-
17 6(h)(1)(A)(iii) allows individuals to bring a private claim for violation of Sarbanes-Oxley even if
18 that individual does not meet Section 78u-6(a)'s definition of "whistleblower" because Section
19 78u-6(h)(1)(A)(iii) is an exception to Dodd Frank's definition of "whistleblower." This is a
20 matter of first impression in the Ninth Circuit.

21      The first step in determining whether or not reporting to upper management is sufficient
22 to entitle one to "whistleblower protection" under 78u-6(h) is to decide whether or not the statute
23 is ambiguous. "When faced with questions of statutory construction, 'we must first determine
24 whether the statutory text is plain and unambiguous' and, '[i]f it is, we must apply the statute
25 according to its terms.'" *Asadi v. G.E. Energy (USA), L.L.C.,* 720 F.3d 620, 622 (5th Cir. 2013)
26 (citing to *Carcieri v. Salazar,* 555 U.S. 379, 387 (2009)). "The plainness or ambiguity of
27 statutory language is determined by reference to the language itself, the specific context in which

that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.,* 519 U.S. 337 (1997). "The inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Id.* at 340. If the statutory text is unambiguous, the inquiry begins and ends with the text. *BedRoc Ltd. V. United States,* 541 U.S. 176, 183 (2004). However, if the statute is ambiguous, courts look to administrative regulations for clarification. *Chevron U.S.A. Inc. v. Natural Resources Defense Counsel, Inc*., 467 U.S. 837, 842-43 (1984).

Very few courts have considered this issue. All four district courts that have done so have found the statute to be ambiguous in this regard. *See Nollner v. S. Baptist Convention, Inc.,* 852 F. Supp. 2d 986, 988 (M.D. Tenn. 2012); *Murray v. UBS Sec., LLC*, 12 CIV. 5914 JMF, 2013 WL 2190084 (S.D.N.Y. May 21, 2013); *Kramer v. Trans-Lux Corp.,* 3:11 CIV. 1424 SRU, 2012 WL 4444820 (D. Conn. Sept. 25, 2012); *Egan v. TradingScreen, Inc.,* 10 CIV. 8202 LBS, 2011 WL 1672066 (S.D.N.Y. May 4, 2011). These courts premise their holding on three grounds: (1) the purpose of the Dodd-Frank Act was to "improve the accountability and transparency of the financial system," and create "new incentives and protections for whistleblowers;" (2) extending the "whistleblower protection" provision only to individuals who meet the Dodd-Frank definition of "whistleblower" would violate a tenet of statutory interpretation by making Section 78u-6(h)(1)(A)(iii) superfluous; and (3) the SEC issued regulation 34300-01 stating 78u-6(h)(1)(A)(iii) protection is available to some individuals who do not report violations consistent with 78u-6(a)(6).

Meanwhile, the only appellate decision to address this issue found the statute unambiguous and held an individual must first meet the definition of "whistleblower" to qualify for "whistleblower protection." In *Asadi v. G.E. Energy (USA), L.L.C.,* the Fifth Circuit held the statute is unambiguous for three reasons: (1) Section 78u-6(h)(1)(A) limits "whistleblower protection" to "whistleblowers"; (2) "Section 78u–6(h)(1)(A)(i) protects whistleblowers from employer retaliation for the action that made the individual a whistleblower in the first instance, *i.e.,* providing information relating to a securities law violation to the SEC"; and (3) limiting

"whistleblower protection" to individuals who are "whistleblowers" under Section 78u-6(a) does not make 78u-6(h)(1)(A)(iii) superfluous because it would still protect individuals who filed a complaint with the SEC but were retaliated against for another reason. *Asadi v. G.E. Energy (USA), L.L.C.,* 720 3.d 620 (2013).

Applying the rules of statutory interpretation set forth above, the statute is not ambiguous; the "whistleblower protection" provided by Section 78u-6(h) is only available to individuals who meet the Dodd-Frank definition of "whistleblower" found in Section 78u-6(a). To conclude to the contrary, one would have to ignore several canons of statutory interpretation. First, allowing individuals who did not report to the SEC to be designated a "whistleblower" under 78u-6(a) would ignore the plain language of that statute. As the Court held in *Chevron*, the first step of statutory interpretation is asking "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter." 467 U.S. at 842-43. Section 78u-6(h)(1)(A) states "[n]o employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, *a whistleblower* in the terms and conditions of employment because of any lawful act done by the *whistleblower*." (emphasis added). Thus, the statute specifies that an employer may not take the above actions against a *whistleblower*. It is not until after this clause that Congress adds protection for reports that are protected by Sarbanes-Oxley, indicating that the latter is subordinate to the former. When read together, 78u-6(h)(1)(A) and 78u-6(h)(1)(A)(iii) state "[n]o employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, *a whistleblower* in the terms and conditions of employment because of any lawful act done by the *whistleblower in* making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002." (emphasis added). Congress could have used a word other than "whistleblower" but chose not to. *Asadi v. G.E. Energy (USA), L.L.C.,* 720 F.3d 620, 626 (5th Cir. 2013).

Second, as the Fifth Circuit noted in *Asadi*, interpreting Section 78u-6(h)(1)(A)(iii) to be an exception to the Section 78u-6(a) definition of "whistleblower" would render the words "to

the Commission" superfluous. 720 F.3d at 625. Construing the statute in this manner would violate the surplusage canon that every word is to be given effect. *See, e.g., TRW Inc. v. Andrews,* 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.")

Third, allowing individuals who do not satisfy the Dodd-Frank definition of "whistleblower" to bring a claim under Section 78u-6(h) would contradict that section's title. Section 78u-6(h) is titled "whistleblower protection." While a heading cannot limit the plain meaning of the text, it lends support to the conclusion that Section 78u-6(h) applies only to those individuals who qualify as "whistleblowers" as defined in § 78u–6(a)(6). *See Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.,* 554 U.S. 33, 47 (2008) ("To be sure, a ... heading cannot substitute for the operative text of the statute. Nonetheless, statutory titles and section headings are tools available for the resolution of a doubt about the meaning of a statute." (citations and internal quotation marks omitted)).

Fourth, the SEC's regulation should only be granted deference if the statute is ambiguous on its face. The SEC has promulgated a regulation providing an individual may be a whistleblower if he or she reports to persons or authorities other than the SEC. *Securities and Exchange Commission, Securities Whistleblower Incentives and Protections*, 76 Fed. Reg. 34300-01, at*34304 (June 13, 2011). The plaintiff, and some district courts, point to the SEC's issuance of this regulation as support for the argument that the statute is ambiguous. Deference, however, is only warranted if the statute is ambiguous on its face. "[I]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron,* 467 U.S. at 842-43. Furthermore, the SEC might have reason for issuing this regulation other than statutory ambiguity. Indeed, neither the district court opinions noted above, nor plaintiff's papers, invoke any authority suggesting the SEC issued this regulation *because* of ambiguity in the statute.

Finally, while the district court opinions are correct that the purpose of the Dodd-Frank Act is to "improve the accountability and transparency of the financial system," and create "new incentives and protections for whistleblowers," it is not the only protection available to individuals who believe they are being retaliated against for revealing securities fraud. These plaintiffs have other options. Here, the plaintiff could have filed a complaint with the Secretary of Labor under Sarbanes-Oxley within 180 days of the purported violation. 18 U.S.C. § 1514A(b)(2)(D). Indeed, as discussed above, Dodd-Frank doubled the amount of time an individual has available within which to file such a complaint. The plaintiff chose not to do so. While this forfeiture may sometimes lead to unfortunate results where individuals who take socially-desirous actions fail to be granted protection, this conclusion comes as the result of that individual's own delay and does not bear upon the availability of Section 78u-6(h) relief.

Because plaintiff did not file a complaint to the SEC, he is not a "whistleblower" under the Dodd-Frank Act. 15 U.S.C. 78u-6(a)(6). For the reasons discussed above, Section 78u-6(h) only extends "whistleblower protection" to individuals who qualify as "whistleblowers" under Dodd-Frank. Plaintiff's first claim for relief is therefore dismissed. Likewise, the Dodd-Frank and Sarbanes-Oxley bases for plaintiff's third claim are also dismissed.

B. Wrongful Termination in Violation of Public Policy

Banko's second claim for relief contends he was wrongfully terminated in violation of public policy. According to Banko, he was fired in response to his report of Roe's embezzlement. This retaliatory firing, according to Banko, violates the public policies against embezzlement, illegitimate corporate tax deductions, and encouragement of whistleblowing. Apple moves to dismiss, arguing the complaint fails to state a claim because it omits reference to specific public policy and avers only a violation of non-actionable Apple policy.

In the complaint, Banko specifically avers that his termination violates the policy behind both the Sarbanes-Oxley and Dodd-Frank Acts. Apple's suggestion that an action cannot be against both public policy and company policy is unpersuasive. To hold otherwise would grant companies license to nullify wrongful termination for violation of public policy suits simply by

enacting corresponding internal prohibitions. The authority to which Apple points extends only to the proposition that alleged violations of internal policies do not, *by themselves*, suffice to support a claim for wrongful termination in violation of public policy. *See e.g., Turner v. Anheuser-Busch, Inc*., 7 Cal. 4th 1238, 1257 (1994). Defendant's motion to dismiss plaintiff's second claim for relief therefore must be denied.

### C. Breach of Employment Contract and Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff's fourth and fifth claims sound in contract and aver that Apple violated an employment agreement between the parties as well as the implied covenant of good faith and fair dealing contained in that purported contract. According to Banko, he was given multiple assurances of continued employment at Apple, thereby transforming his employment beyond "at-will." Those assurances include: positive performance reviews, merit-based pay-raises, assurances that he would not be terminated arbitrarily, oral representations from his supervisor that she would back him up with respect to continued employment, and representations by Apple management that he would be employed by Apple so long as his performance was satisfactory and only terminated for cause. According to Banko, these assurances, along with Apple's policy of putting employees on performance improvement plans prior to terminating them, constituted a contract and an implied promise to terminate his employment only for good cause. He avers that Apple failed to fulfill its obligation to adhere to this purported employment contract in good faith. Apple moves to dismiss for failure to state a claim, arguing: (1) the complaint fails to allege facts establishing Banko was not an "at-will" employee; (2) Banko has not alleged any facts establishing under what circumstances Apple could terminate his employment; (3) there was no implied covenant of good faith and fair dealing as the parties did not have an operative employment contract; and (4) Banko's fifth claim does not present facts in addition to those upon which his fourth claim is predicated.

In California, employment having no specified term is presumed to be on an "at-will" basis. Cal. Labor Code § 2922. The parties do not dispute that Banko's employment was never for a specified term and began as an "at-will" employment. Banko's contention, and the

dispositive issue for defendant's motion to dismiss the fourth claim, is whether Apple's assurances to Banko during his 12-year employment were sufficient to shift Banko's employment from "at-will." The presumption to that effect can be altered or limited by oral agreement between an employer and employee. *Guz v. Bechtel Nat. Inc.,* 24 Cal. 4th 317, 336 (2000).

One such potential alteration arises when an employer makes a guarantee to the employee that he will only be fired for good cause. *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 677 (1988). The contractual understanding need not be express, but may be *implied in fact*, arising from the parties' *conduct* evidencing their actual mutual intent to create such enforceable limitations. *Guz,* 24 Cal. 4th at 336. In California, courts consider whether an employment contract is more than "at-will" by looking to "the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged." *Foley,* 47 Cal. 3d at 680. As the California Supreme Court explained in *Foley*, "[w]hen the parties have enforceable expectations concerning either the term of employment or the grounds or manner of termination, Labor Code section 2922 does not diminish the force of such contractual or legal obligations." *Id.*

Neither Banko nor Apple address the *Foley* factors in their papers, but the application of these factors in *Foley* is instructive here. Like the plaintiff in *Foley*, Banko avers his employment agreement evolved to where he could only be fired for cause. Many of the facts that the *Foley* court found adequate to create a triable issue of fact as to whether or not the parties agreed to fire the plaintiff only for good cause are mirrored in the relationship between Banko and Apple. First, the Court found six years and nine months to be sufficient elapsed time for a trier of fact to find that an implied contract had developed. *Id*. at 681. Here, Banko was employed for 12 years, nearly twice as long as the plaintiff in *Foley*. Second, as in that case, Banko avers repeated oral assurances of job security and consistent promotions, salary increases and bonuses during the term of his employment that contributed to his reasonable expectation of discharge only for good

cause. *Id.* Third, just as the defendant in Foley had self-imposed written termination guidelines, Banko alleges Apple had a common practice of placing struggling employees on a performance improvement plan, which, as in *Foley*, did not occur here. *Id.* The presence of these facts in the pleadings is sufficient to state a claim for relief for breach of a contract in violation of Banko's evolved right to be subject to termination only for good cause.

Apple next argues that plaintiff's complaint fails to state a claim for breach of employment contract because it does not specify under what circumstances such a contract could be terminated. Apple fails to point to any authority, however, suggesting that such a contention is required to show an employment contract is not "at-will" or to state a claim for breach of an employment contract. In any event, Apple's contention ignores the fact that the complaint plainly acknowledges Apple could terminate the employment agreement for good cause.

In addition to a contract's express terms, every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. *Foley*, 47 Cal. 3d at 765. Banko alleges Apple violated the implied covenant in his employment contract by firing him in retaliation for his refusal to participate in the cover up of Roe's embezzlement. This averment, coupled with the alleged existence of a contract, is sufficient to state a claim for violation of the covenant of good faith and fair dealing.

Finally, Apple argues Banko's claim for violation of the covenant of good faith and fair dealing should be dismissed because it does not present a factual basis independent from Banko's claim for breach of the employment contract. When an employer's behavior is actionable under breach of contract, a claim for violation of the covenant of good faith and fair dealing is only available if the plaintiff alleges the employer took actions beyond the breach of contract itself. *Guz,* 24 Cal. 4th at 352. Here, plaintiff's claimed violation of the covenant of good faith and fair dealing adds nothing to the claim for breach of the employment contract.

The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made. *Id.* at 349. The complaint fails to plead any facts to

support Apple acted to frustrate Banko's ability to fulfill his end of the bargain other than by firing him, behavior which is actionable under his breach of contract claim. Had Apple taken steps to undermine Banko's performance of his obligations under the employment agreement, Banko might have the basis for a claim based on violation of the covenant of good faith and fair dealing. For example, if Apple agreed to fire Banko only for cause, but then frustrated Banko's ability to perform his contractual obligations, a claim based on the covenant of good faith and fair dealing might arise. No evidence of such behavior, however, is present here. To the contrary, Banko's complaint avers he continued to garner favorable performance reviews up until the time he was fired. That is to say that the very conduct Banko relies upon to bring his other claims for relief is the reason he likely cannot plead facts to support a claim for violation of the covenant of good faith and fair dealing. Defendant's motion to dismiss plaintiff's fifth claim for relief is therefore granted.

## V. CONCLUSION

For the reasons explained above, defendant's motion to dismiss his first claim for relief based on retaliation and the fifth claim, for breach of the implied covenant of good faith and fair dealing, is granted with leave to amend. Defendant's motion to dismiss the wrongful termination and breach of employment contract claims is denied. Defendant's motion to dismiss the California Labor Code claim is denied. Plaintiff must file any amended complaint within 30 days of the date of this order.

IT IS SO ORDERED.

Dated: 9/26/13

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE