IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

JOSHUA BANKO,

    Plaintiff,

v.

APPPLE, INC., and DOES 1-50,

    Defendants.

No. 13-02977 RS

**ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiff Joshua Banko, a former employee of defendant Apple, Inc., filed this action in June 2013. He asserts five claims for relief, each stemming from the allegation that Apple wrongfully terminated his employment. Apple moves to dismiss the first, second, third, and fifth claims alleged in Banko's first amended complaint (FAC). For the following reasons, the motion is denied in part and granted in part. While Banko's second, fourth, and fifth claims can proceed, his first and third claims are dismissed with prejudice.

## II. BACKGROUND[1]

Banko began working as an engineer for Apple in 2000. Over the following twelve years, he earned numerous promotions, positive performance reviews, and discretionary bonuses for his work on Apple products. In January 2012, Banko began to notice irregularities in expense reports

---

[1] The factual background is based on the averments in the FAC, which must be taken as true for purposes of a motion to dismiss.

1 submitted by Employee Roe, a subordinate engineer.[2] Banko directed Roe to remove the allegedly
2 fraudulent charges from her reports. Later that year, he noticed further irregularities in Roe's
3 reported expenses. Banko once more raised the issue with Roe, who again failed to remedy the
4 errors.

5 Banko came to believe that Roe's actions violated both the law and Apple company policy.
6 Operating under the belief that he was obligated to report his subordinates' wrongful behavior,
7 Banko informed his supervisors that Roe had repeatedly filed inaccurate expense reports. His
8 supervisors instructed Banko not to report Roe formally to the company. Banko, believing he was
9 effectively being asked to cover up employee embezzlement, refused their request and lodged a
10 formal complaint with Apple about Roe. As a result, the company conducted an internal audit that
11 revealed over forty instances of misrepresentations on Roe's expense reports. Based on these
12 results, Banko recommended that Roe be terminated.

13 Despite Banko's recommendation, Apple chose to retain Roe. Banko's superiors informed
14 him that he should cease pursuing Roe's termination, stating that she was a valuable employee.
15 Banko, however, continued to believe he had a legal obligation to stop Roe. He then informed
16 Victor Cousins, a member of Apple's Human Resources department, of Roe's alleged wrongdoings.
17 After investigating the matter, Cousins wrote a report recommending Roe's termination. She was
18 ultimately terminated on December 31, 2012.

19 In early January 2013, after returning from a company-wide holiday break, Banko received a
20 significant discretionary bonus for his recent work on an important Apple project. On January 9,
21 2013, Banko was called into a meeting with his supervisor and another human resources employee.
22 He was asked to stay home for the rest of the week – a request Banko understood to indicate that his
23 termination was imminent. When he returned to work the following Monday, January 14, 2013,
24 Banko was terminated.

25 Banko filed suit in June 2013, alleging five claims for relief: (1) violation of the Dodd-Frank
26 Act, (2) wrongful termination in violation of public policy, (3) retaliation in violation of the
27 Sarbanes-Oxley Act, the Dodd-Frank Act, and California Labor Code § 1102.5, (4) breach of

---

28 [2] Employee Roe's name has been changed to protect her privacy.

1 employment contract, and (5) breach of the implied covenant of good faith and fair dealing.  Apple
2 moved to dismiss the complaint in its entirety.  The motion was denied in part and granted in part
3 with leave to amend.  (Docket No. 29).  The first claim was dismissed on the grounds that Banko
4 does not qualify as a "whistleblower" under the Dodd-Frank Act because he did not report Roe's
5 alleged embezzlement to the Securities and Exchange Commission.  Similarly, because Banko did
6 not demonstrate that he can avail himself of federal whistleblower protection, the dismissal order
7 further found that Banko's third claim for retaliation is not cognizable under Sarbanes-Oxley or
8 Dodd-Frank.  That order permitted the third claim to proceed, however, under the theory that Apple
9 violated the California Labor Code.  Banko's fifth claim for breach of the implied covenant of good
10 faith and fair dealing was dismissed for failure to allege that Apple frustrated his ability to perform
11 his contractual obligations.  The motion was denied with respect to the second and fourth claims.
12 Banko proceeded to file the pending FAC.  Apple now moves to dismiss the FAC's first, second,
13 third, and fifth claims for relief.

### III. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject matter jurisdiction over the plaintiff's claims.  A challenge to subject matter jurisdiction "can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint."  *Savage v. Glendale Union High Sch*., 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003).  A complaint may also be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  A Rule 12(b)(6) motion may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

A complaint must present factual allegations sufficient "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Specifically, the factual allegations must suffice to state a claim that is "plausible on its face," that is, "plausibly suggesting (not merely consistent with)" a right to relief.  *Id.* at 557, 570.  While the factual allegations of the complaint are taken as true and all reasonable inferences are drawn in favor of the plaintiff,

No. CV 13-02977 RS
ORDER

3

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly,* 550 U.S. at 555. Accordingly, "a court discounts conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

## IV. DISCUSSION

### A. Banko's Procedural Objections

Banko asserts that the bulk of Apple's motion is procedurally improper. In particular, he contends that because the court denied Apple's prior attempt to dismiss the second and third claims, Rule 12(g) bars Apple from challenging those claims again. That rule provides, in pertinent part:

> If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated.

Fed. R. Civ. P. 12(g). Rule 12(h)(2), in turn, allows a party to raise a defense of failure to state a claim: "(A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." Fed. R. Civ. P. 12(h)(2).

Apple's motion proceeds on two bases. First, Apple contends the court lacks subject matter jurisdiction over the third claim. Federal courts have a continuing obligation to dismiss claims over which they lack subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). Accordingly, it is entirely proper for the court to address whether it has subject matter jurisdiction over Banko's third claim. Second, Apple argues that several of Banko's claims must be dismissed for failure to state a claim upon which relief can be granted. Unlike motions under Rules 12(b)(2)-(5), a motion to dismiss under Rule 12(b)(6) is not mandatorily barred when omitted from a prior Rule 12 motion. *See* Fed. R. Civ. P. 12(h)(1). Although Rule 12(g) "technically prohibits successive motions to dismiss that raise arguments that could have been made in a prior motion . . . courts faced with a successive motion often exercise their discretion to consider the new arguments in the interests of judicial economy." *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 2011 WL 2690437, *2 n. 1 (N.D.

Cal. 2011). In this case, it is reasonable for the court to consider more fully how its prior holding impacts the viability of Banko's remaining claims.

### B. First Claim: Violation of Dodd-Frank Act

The Dodd-Frank Act prohibits employers from taking adverse employment actions against "whistleblower" employees for making disclosures that are required or protected under the Sarbanes-Oxley Act. 15 U.S.C. § 78u-6(h)(1)(A). Banko claims that Apple violated Dodd-Frank, contending his termination was motivated by his disclosures, which he asserts are protected by Sarbanes-Oxley.

This claim was dismissed in the court's prior order. (Docket No. 29). Banko, who has not amended this claim, intends to appeal the court's conclusion that he cannot avail himself of Dodd-Frank's whistleblower protections. The first claim is therefore dismissed without leave to amend.

### C. Second Claim: Wrongful Termination in Violation of Public Policy

In California, an employer may be subject to tort liability if it terminates an employee in violation of a fundamental public policy. *Steffens v. Regus Grp., PLC*, 485 F. App'x 187, 188 (9th Cir. 2012) (citing *Gould v. Md. Sound Indus., Inc.*, 31 Cal. App. 4th 1137, 1147 (1995)). To sustain a claim for wrongful termination, the underlying public policy must be (1) supported by either constitutional or statutory provisions; (2) "public" in the sense that it "inures to the benefit of the public" rather than merely serving the interests of individuals; (3) well-established at the time of plaintiff's discharge; and (4) "fundamental" and "substantial." *Stevenson v. Super. Ct.*, 941 P.2d 1157, 1161 (Cal. 1997).

Claims for wrongful termination "typically arise when an employer retaliates against an employee for refusing to violate a statute, performing a statutory obligation, exercising a statutory right, or reporting an alleged violation of a statute of public importance." *Gould*, 31 Cal. App. 4th at 1147. When an employee claims he was terminated for reporting an alleged violation of a statute of public importance, he "is not required to report the violation to a government or law enforcement agency; internal reporting is sufficient." *Steffens*, 485 F. App'x at 188 (citing *Gould*, 31 Cal. App. 4th at 1150). Nor, for purposes of surviving a motion to dismiss, must the employee specify the particular statutory provision(s) supporting his claim. *See Vargas v. BP Am., Inc.*, 2011 WL

No. CV 13-02977 RS
ORDER

5

1601588 (E.D. Cal. 2011) (stating that while failure to identify a specific statutory or constitutional policy would doom a wrongful termination claim in state court, federal notice pleading requires less); *see also Stoval v. Basin St. Properties*, 2013 WL 6002758, *3 (N.D. Cal. 2013) (denying employer's motion for summary judgment on wrongful termination claim where employee failed to specify which statutory provision was implicated by his allegation).

The FAC alleges that Roe's embezzlement of a publicly-traded corporation's funds harmed the general public by "impacting the millions of Apple shareholders[] and . . . creating tax irregularities[.]" FAC ¶ 64. Banko contends that by ordering him to cease pursuing Roe's termination, and for eventually firing him because he was unwilling to ignore Roe's embezzlement, Apple punished him for reporting illegal activity in the workplace. Banko maintains he was simply seeking to enforce laws and policies that discourage employee financial misconduct, thereby benefitting Apple and the general public alike.

Apple argues that Banko's wrongful termination claim fails for several reasons. First, seizing upon the prior order's conclusion that Banko is not a "whistleblower" for purposes of Sarbanes-Oxley or Dodd-Frank, Apple argues that because Banko cannot prevail on that federal claim for relief, neither can he predicate his wrongful termination claim on the theory that Apple violated public policies set forth in either federal statute. Several courts in this district have held, however, that even where a plaintiff is unable to state a claim for relief under a particular statute, he can nevertheless prevail on a claim that he was wrongfully terminated in violation of that statute's policy.[3]

In *Weingand v. Harland Fin. Solutions, Inc.*, the plaintiff sued his former employer, alleging he was fired for notifying supervisors that the company may have been violating California wage-

---

[3] At oral argument, Apple purported not to dispute that a wrongful termination claim can be premised on a public policy set forth in a statute under which the wrongful termination plaintiff cannot recover. Apple maintains, however, that the policies underlying federal and California retaliation statutes do not protect employees who, like Banko, fail to report co-worker wrongdoing to outside authorities. This argument rings hollow at least with respect to the California Labor Code, which expressly protects employees who "refus[e] to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation." Cal. Lab. Code § 1102.5(c). An employee need not report to authorities in order to seek protection under this subsection.

1   and-hour laws. 2012 WL 3537035 (N.D. Cal. 2012). The court dismissed plaintiff's retaliation
2   claim under California Labor Code § 1102.5, reasoning that he failed to meet the statutory
3   requirement of reporting the alleged wrongdoing to authorities.[4] *Id.* at *4. His wrongful
4   termination claim, on the other hand, survived the employer's motion to dismiss. The employer
5   argued that because the plaintiff's actions were not protected under the retaliation statute, his claim
6   for wrongful termination could not be predicated upon the allegation that he was fired in violation of
7   California Labor Code policy. The court disagreed, finding that "other cases with similar facts . . .
8   have looked to the public policy evinced by the *purpose* of various statutes as opposed to a
9   mechanical application of the statutory causes of action on an element-by-element basis." *Id.* at *8.
10  (emphasis in original); *see also Gould*, 31 Cal. App. 4th at 1148 ("[I]f MSI discharged Gould in
11  retaliation for his reporting violations of the overtime wage law to MSI management, it violated a
12  fundamental public policy of the state.")).

13   Similarly, in *Stoval v. Bain Street Properties*, the plaintiff's wrongful termination claim was
14  cognizable based on the public policy reflected in § 1102.5 even though the plaintiff was likely
15  precluded from stating a claim under the statute. 2013 WL 6002758 (N.D. Cal. 2013). In *Stoval*,
16  the plaintiff was employed as a facilities manager for a company that owned several apartment
17  buildings. The plaintiff was terminated after informing his employer that a co-worker illegally
18  connected a cable television service to an apartment unit inside one of the employer's properties.
19  The court denied the employer's summary judgment motion on the plaintiff's wrongful termination
20  claim, reasoning that § 1102.5 "evinces a strong public interest in encouraging employee reports of
21  illegal activity in the workplace." *Id.* *3 (quoting *Collier v. Super. Ct.*, 228 Cal. App. 3d 1117, 1123
22  (1991) (alterations and quotation marks omitted). The court acknowledged that the plaintiff, who
23  did not specify he was terminated in violation of § 1102.5's policy, and who had not pled a claim
24  under the statute, would likely be precluded from protection under § 1102.5 due to his failure to

---

[4] Nor could the plaintiff in *Weingand* establish that he had refused to participate in illegal activity. *See* § 1102.5(c).

report the alleged wrongdoing to authorities.[5] *Id.* Nonetheless, the court held that because the California Labor Code's retaliation statute reflects a strong public policy encouraging employees to report illegal workplace activity, the plaintiff's claim could proceed on the basis that he was terminated for reporting his co-worker's alleged cable theft. *Id.*

*Weingand* and *Stoval* demonstrate that Banko's failure to state a claim under a particular statute (*e.g.*, Dodd-Frank) does not preclude him from relying on that statute's policies for purposes of his wrongful termination claim. As an initial matter, the Dodd-Frank and California Labor Code retaliation provisions both appear to reflect a strong public interest in encouraging employees to report illegal activity in the workplace. However, there is little case law exploring the extent to which a wrongful termination tort can be premised on the policies set forth in Dodd-Frank. For purposes of resolving this motion, it is sufficient to conclude that Banko's claim can proceed on the theory that he was terminated in violation of the "strong public interest," reflected in California Labor Code § 1102.5, "in encouraging employee reports of illegal activity in the workplace." *Collier*, 228 Cal. App. 3d at 1123; *see also Stoval*, 2013 WL 6002758 at *4.

Apple further contends that Banko's claim must fail because it cannot be tethered to any "fundamental" public policy. *See Remus v. Fios, Inc.*, 2012 WL 707477 at *10 (N.D. Cal. 2012). According to Apple, it is well-settled that internal company complaints about employee embezzlement do not implicate a fundamental public policy for purposes of the wrongful termination tort. It relies primarily on *American Computer Corp. v. Superior Court*, wherein the California Court of Appeal held that the plaintiff's internal reporting of co-worker embezzlement was insufficient to sustain a wrongful termination claim. *See* 213 Cal. App. 3d 664 (1989). The court reasoned that "the most that can connect [plaintiff's] conduct with the public interest is the argument that by reporting his suspicions to his superiors he took action which might eventually prevent or uncover commission of a felony and thereby serve[] the laudable goal of preventing crime." *Id.* at 668.

---

[5] The court in *Stoval* did not address § 1102.5(c), presumably because the plaintiff did not "refus[e] to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation." Cal. Lab. Code § 1102.5(c).

The court in *Stoval* rejected an argument similar to the one Apple makes here. Examining California cases decided since *American Computer*, the court concluded that "[u]nder California law, it implicates a public policy to terminate an employee's employment as a result of his or her reporting a criminal activity." 2013 WL 6002758, *4. In *Collier*, decided two years after *American Computer*, the California Court of Appeal recognized that there is a compelling and "fundamental public interest in a workplace free from crime." 228 Cal. App. 3d at 1127. Further, in *Haney v. Aramark Unif. Servs., Inc.*, the California Court of Appeal found that where a policy underlying a wrongful termination claim is reflected in a provision of the Penal Code, "the policy is deemed fundamental or substantial, and inures to the benefit of the public rather than merely serving the interests of individuals." *Stoval* at *4 (summarizing *Haney*, 121 Cal. App. 4th 623 (2004)). Banko reported embezzlement, a crime enumerated in the state Penal Code. *See* Cal. Penal Code § 503. Apple is therefore incorrect to contend that, as a matter of law, Banko's internal complaint about Roe's alleged criminal activity cannot implicate a fundamental public policy. *See Stoval* at *3 (because cable theft is proscribed in the Penal Code, wrongful termination claim could proceed where employee was allegedly fired for reporting co-worker's cable theft).

Against the backdrop of *Haney* and *Collier*, both of which acknowledge that reporting criminal activity in the workplace implicates a public policy, Apple's other authorities are less compelling. Apple relies on *Rivera v. Nat'l R.R. Passenger Corp.*, wherein the Ninth Circuit held that "reporting ongoing criminal conduct to an employer's management does not *necessarily* implicate a public interest." 331 F.3d 1074, 1080 (9th Cir.) (emphasis added). In *Rivera*, the plaintiff alleged he was wrongfully terminated for reporting unsafe and illegal activities in the workplace. The district court granted the defendant's motion for summary judgment, and the Ninth Circuit affirmed, reasoning that there was insufficient evidence that the plaintiff actually reported the criminal activity to his employer. Then, in apparent dicta, the court stated that "[i]f Rivera had reported the illegal activities of his co-workers, Rivera may have achieved the 'laudable goal' of preventing crime, but this is not enough to fit within the narrow confines of wrongful termination in violation of public policy." *Id.* at 1080 (quoting *American Computer*, 213 Cal. App. 3d at 668). The court's conclusion apparently was premised exclusively on *American Computer*, a case the

1  California Court of Appeal has since found to be inconsistent with subsequent California cases. *See*
2  *Collier*, 228 Cal. App. 3d at 1125. Moreover, *Rivera* was decided before *Haney*, in which the Court
3  of Appeal held that a wrongful discharge claim implicates fundamental public policy when the
4  plaintiff alleges he was fired for reporting and refusing to engage in fraudulent billing practices. *See*
5  121 Cal. App. 4th at 643.[6] In sum, because Banko alleges sufficient facts to support a plausible
6  claim that he was terminated for reporting co-worker embezzlement in the workplace, Apple's
7  motion is denied with respect to his second claim.

### D. Third Claim: Retaliation

Banko alleges that Apple retaliated against him in violation of Dodd-Frank, Sarbanes-Oxley, and California Labor Code § 1102.5. As discussed in the court's prior order, Banko's third claim cannot proceed under either federal law. (Docket No. 29). Apple contends state law similarly provides no remedy. Like Dodd-Frank and Sarbanes-Oxley, the state statute seeks to protect whistleblowers by prohibiting employers from retaliating against employees for engaging in certain categories of protected activity. Cal. Lab. Code § 1102.5. While § 1102.5(a) and (b) provide protections for employees who report wrongdoing to government authorities, (c) prohibits employers from retaliating against employees "for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation." *Id.* § 1102.5(c).

Apple contends that the court lacks subject matter jurisdiction over this claim, arguing that Banko was required to exhaust his administrative remedies with the California Labor Commissioner before coming to federal court. Although § 1102.5 is silent on administrative exhaustion requirements, § 98.7 sets out the complaint process for an employee alleging a violation of the California Labor Code. *See Dowell v. Contra Costa Cnty.*, 928 F. Supp. 2d 1137, 1152 (N.D. Cal. 2013). That statute provides, in pertinent part: "Any person who believes that he or she has been discharged or otherwise discriminated against in violation of any law under the jurisdiction of the

---

[6] Apple also invokes *Van Hulten v. Us. Sec. Assocs.*, 2010 U.S. Dist. LEXIS 57979 (E.D. Cal. 2010), *Lewis v. Electronic Data Systems Corp.*, 2004 Cal. App. Unpub. LEXIS 8987 (2004), and *Giknyo v. Alticor, Inc.*, 2010 Cal. App. Unpub. LEXIS 3303 (2010). All three cases rely primarily on *American Computer* for the notion that reporting co-worker wrongdoing does not implicate a fundamental public policy.

Labor Commissioner *may* file a complaint with the division within six months after the occurrence of the violation." Cal. Lab. Code § 98.7(a) (emphasis added). Noting the permissive language of the statute, some courts in this district have held that § 98.7(a) does not require a plaintiff to exhaust administrative remedies before bringing a § 1102.5 claim in federal court. *See, e.g., Dowell*, 928 F. Supp. 2d at 1153; *Turner v. City & County of San Francisco*, 892 F. Supp. 2d 1188, 1201–02 (N.D. Cal. 2012). The majority of courts addressing the issue, however, have held that a plaintiff must file a complaint with the Labor Commissioner before bringing a § 1102.5 claim in federal court. *See, e.g., Miller v. Sw. Airlines, Co.*, 923 F. Supp. 2d 1206, 1210 (N.D. Cal. 2013); *Wright v. Kaiser Found. Hospitals*, 2012 WL 4097738 (N.D. Cal. 2012); *Ferretti v. Pfizer Inc.*, 855 F. Supp. 2d 1017, 1023 (N.D. Cal. 2012); *Morrow v. City of Oakland*, 2012 WL 2133755 (N.D. Cal. 2012); *Reynolds v. City & Cnty. of San Francisco*, 2011 WL 4808423 (N.D. Cal. 2011). These cases rely on *Campbell v. Regents of University of California*, in which the California Supreme Court held that even though § 1102.5 is silent on the issue, "the past 60 years of California law on administrative remedies" nevertheless compels the conclusion that a plaintiff bringing a claim under the statute is subject to the exhaustion requirement. 106 P.3d 976, 988 (2005).

Banko pleads no facts indicating that he filed an administrative complaint with the Labor Commissioner. Accordingly, he fails to demonstrate that the court has subject matter jurisdiction over his § 1102.5 claim. At oral argument, counsel for Banko acknowledged that the administrative exhaustion requirements have not been satisfied. Accordingly, because amendment apparently would be futile, the third claim for retaliation is dismissed with prejudice. *See AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

E. <u>Fifth Claim: Breach of Implied Covenant of Good Faith and Fair Dealing</u>

Every contract contains an implied-in-law covenant of good faith and fair dealing that "neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 2 P.3d 1, 8 (2000) (quotations and citations omitted). The implied covenant "imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 272 Cal. Rptr. 387, 398 (Ct. App. 1990) (citations and quotations omitted). Thus,

1 it "protects only the parties' right to receive the benefit of their agreement." *Foley v. Interactive Data Corp.*, 765 P.2d 373, 400 n. 39 (1988). "A claim for breach of the implied covenant of good faith and fair dealing is not duplicative of a breach of contract claim when a plaintiff alleges that the defendant acted in bad faith to frustrate the benefits of the alleged contract." *Davis v. Capitol Records, LLC*, 2013 WL 1701746 (N.D. Cal. 2013).

Unlike his initial complaint, Banko's amended complaint plausibly suggests he is entitled to relief for this claim. *See Twombly*, 550 U.S. at 570. Banko reported Roe's activities to his supervisors due to his belief that he was obligated by law and company policy to do so. Banko avers that when he was told to cease pursuing Roe's termination, Apple presented him with an untenable dilemma: either disobey his superiors' instructions or adopt a course of conduct Banko believed would violate Apply policy and the law. According to Banko, his employer's actions made it impossible for him to do his job pursuant to his purported employment contract, thereby breaching Apple's obligation to abide by the implied covenant of good faith and fair dealing.[7] When viewing these allegations in a light most favorable to Banko, the FAC raises his right to relief "above the speculative level" for breach of the implied covenant of good faith and fair dealing. *Id.* at 555. Accordingly, Apple's motion is denied with respect to Banko's fifth claim.

V. CONCLUSION

For the foregoing reasons, Apple's motion is GRANTED with respect to Banko's first and third claims for relief. It is DENIED with respect to his second and fifth claims.

---

[7] The FAC further avers that Apple breached the implied covenant by terminating Banko in order to avoid paying him a separate bonus he allegedly earned as a result of his work on an important Apple invention. Apple rejects this allegation, arguing that Banko's implied covenant claim is duplicative of his breach of contract claim. *See Celador Int'l Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 852 (C.D. Cal. 2004) ("A breach of the implied covenant of good faith and fair dealing involves something more than breach of the contractual duty itself.") (citing *Careau & Co. v. Security Pacific Business Credit, Inc.*, 272 Cal. Rptr. 387, 398 (Ct. App. 1990)). Banko avers the existence of an implied contract whereby Apple could terminate him only for cause. Taking Banko's allegations as true, Apple had a duty to execute the contract's purposes in good faith. *See Daly v. United Healthcare Ins. Co.*, 2010 WL 4510911 (N.D. Cal. 2010). If Apple fired Banko in bad faith to deprive him of the bonus he would have otherwise received absent his sudden and unexpected termination, it may have breached the implied covenant of good faith and fair dealing. Because Banko's other averments are sufficient to survive Apple's 12(b)(6) motion on this claim, the invention bonus allegations are, if anything, an additional grounds warranting the denial of Apple's motion as to this claim.

1
2       IT IS SO ORDERED.
3
4   Dated: 12/16/13
5                                           _____
6                                           RICHARD SEEBORG
                                            UNITED STATES DISTRICT JUDGE
7